UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BRIAN SHERWOOD,

                      Plaintiff,

    v.

KILOLO KIJAKAZI, *Acting Commissioner of the Social Security Administration*,

                      Defendant.

No. 21-CV-10847 (KMK)

ORDER ADOPTING REPORT & RECOMMENDATION

---

KENNETH M. KARAS, United States District Judge:

      Brian Sherwood ("Plaintiff") brings this Action against the Acting Commissioner of Social Security ("Defendant" or the "Commissioner"), pursuant to 42 U.S.C. § 405(g), challenging the decision of an administrative law judge ("ALJ") to deny Plaintiff's application for a period of disability and disability insurance benefits on the ground that Plaintiff is not disabled within the meaning of the Social Security Act (the "SSA"), 42 U.S.C. §§ 423, et seq. (*See* Compl. (Dkt. No. 1).) On December 27, 2021, the Court referred the case to Magistrate Judge Paul E. Davison ("Judge Davison"), pursuant to 28 U.S.C. § 626(b)(1)(A). (*See* Dkt. No. 9.) Plaintiff and Defendant both moved for judgment on the pleadings. (*See* Dkt. Nos. 21, 24.) On November 23, 2022, Judge Davison issued a Report and Recommendation ("R&R") recommending that the Court deny Plaintiff's Motion for Judgment on the Pleadings ("Plaintiff's Motion") and grant Defendant's Cross-Motion for Judgment on the Pleadings ("Defendant's Motion"). (*See* R&R 41 (Dkt. No. 27).) Plaintiff filed Objections to the R&R on December 7, 2022, (*see* Pls.' Objs. to the R&R ("Pl.'s Objs.") (Dkt. No. 28)), and Defendant filed a Response December 20, 2022, (*see* Def.'s Resp. to Pl.'s Objs. ("Def.'s Resp.") (Dkt. No. 29)). For the

reasons discussed below, the Court adopts the result recommended in the R&R and overrules Plaintiff's Objections.

## I.  Discussion

### A.  Standard of Review

#### 1.  Review of a Report and Recommendation

A district court addressing a dispositive motion "may accept, reject, or modify, in whole or in part, the findings or recommendations made by a magistrate judge."  28 U.S.C. § 636(b)(1). Pursuant to § 636(b)(1) and Federal Rule of Civil Procedure 72(b)(2), parties may submit objections to the magistrate judge's report and recommendation.  The objections must be "specific" and "written," and must be made "[w]ithin 14 days after being served with a copy of the recommended disposition."  Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1).

When a party submits timely objections to a report and recommendation, the district court reviews de novo the parts of the report and recommendation to which the party objected.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).  The district court "may adopt those portions of the . . . report [and recommendation] to which no 'specific written objection' is made, so long as the factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous or contrary to law."  *Rogers v. Astrue*, 895 F. Supp. 2d 541, 547 (S.D.N.Y. 2012) (quoting Fed. R. Civ. P. 72(b)(2)).  "[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision."  *Caidor v. Onandaga County*, 517 F.3d 601, 604 (2d Cir. 2008) (citation omitted); *see also Thai Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic Republic*, 924 F. Supp. 2d 508, 517 (S.D.N.Y. 2013) (refusing to consider objections filed one day late).  Moreover, "objections that are merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original papers will not suffice to invoke de novo review

[of the magistrate's recommendations]." *Belen v. Colvin*, No. 14-CV-6898, 2020 WL 3056451, at *2 (S.D.N.Y. June 9, 2020) (alteration, citation, and italics omitted); *see also George v. Pro Disposables Int'l, Inc.*, 221 F. Supp. 3d 428, 434 (S.D.N.Y. 2016) (same).

### 2. Review of a Social Security Claim

In evaluating a social security claim, the reviewing court does not determine for itself whether the plaintiff was disabled and therefore entitled to social security benefits. *See Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) ("[W]e do not substitute our judgment for the agency's, or determine de novo whether the claimant was disabled." (citations, quotation marks, alterations, and italics omitted)). Instead, the reviewing court considers merely "whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004). Accordingly, a court may overturn an ALJ's determination only if it was "'based upon legal error'" or "'not supported by substantial evidence.'" *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quoting *Balsamo v. Chater*, 142 F.3d 75, 79 (2d Cir. 1998)); *see also Cage*, 692 F.3d at 122 ("[W]e conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision." (alteration in original) (quoting *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009))). "Substantial evidence, however, is 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rosa*, 168 F.3d at 77 (quoting *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996)); *see also Richardson v. Perales*, 402 U.S. 389, 401 (1971) (same). In considering whether substantial evidence supports the ALJ's decision, the reviewing court must "examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted).

In determining whether a claimant is entitled to disability insurance benefits, the ALJ follows a five-step analysis:

1. The Commissioner considers whether the claimant is currently engaged in substantial gainful activity.

2. If not, the Commissioner considers whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities.

3. If the claimant has a "severe impairment," the Commissioner must ask whether, based solely on medical evidence, [the] claimant has an impairment listed in Appendix 1 of the regulations. If the claimant has one of these enumerated impairments, the Commissioner will automatically consider him or her disabled, without considering vocational factors such as age, education, and work experience.

4. If the impairment is not "listed" in the regulations, the Commissioner then asks whether, despite the claimant's severe impairment, he or she has residual functional capacity [("RFC")] to perform his or her past work.

5. If the claimant is unable to perform his or her past work, the Commissioner then determines whether there is other work which the claimant could perform.

*Shaw v. Chater*, 221 F.3d 126, 132 (2d Cir. 2000) (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1179–80 (2d Cir. 1998)); *see also* 20 C.F.R. §§ 404.1520(a)(4)(i)–(v).  The claimant bears the burden of proof for the first four steps.  *See Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008).  If, however, the claimant proves that his impairment prevents him from performing his past work, the burden shifts to the Commissioner at the fifth step.  *See id.*  There, the Commissioner must prove "that there is other gainful work in the national economy that [the claimant] could perform."  *Kamerling v. Massanari*, 295 F.3d 206, 210 (2d Cir. 2002).  If the ALJ determines that a "significant number of jobs exist in the national economy that the claimant can perform," *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014), the ALJ must deny disability insurance benefits to the clamant, *see* 20 C.F.R. § 404.1520(a)(4)(v).

4

B.  Analysis

The Court adopts the recitation of facts set forth by Judge Davison in his thorough R&R, (see R&R 2–41), and assumes the Parties' familiarity with it.  The Court will repeat only those facts relevant to the consideration of Plaintiff's Objections.

Plaintiff raises two challenges to Judge Davison's R&R, largely mirroring Plaintiff's original Motion for Judgment on the Pleadings, which argue: 1) the ALJ erroneously determined that Plaintiff did not meet the requirements for the Listing of Impairments used to determine whether a claimant is disabled under the SSA, specifically challenging the ALJ's determination that he did not meet Listing 1.04C, (see Pl.'s Objs. 1–2); 2) the ALJ incorrectly evaluated the treating physicians' reports regarding Plaintiff's alleged disability, (see id. 2–3); and 3) the ALJ impermissibly relied upon the medical opinions of Dr. Ronald Mann ("Dr. Mann") in evaluating the record, (see id. at 3).  The Court will address each of these contentions in turn.

1.  Plaintiff's Eligibility for Listing of Impairments 1.04C

Plaintiff re-raises an argument put forth before Judge Davison, contending that the ALJ erred by "finding that the [P]laintiff does not meet [L]isting 1.04C" because the ALJ "did not properly consider whether the [P]laintiff's positive findings during physical examinations met or equaled [L]isting 1.04." (Pl.'s Objs. 1.)  As outlined in the R&R, Listing 1.04C delineates the "specified medical criteria" to qualify for a disability under the SSA for spinal disorders, which requires that, in addition to a diagnosis of a spinal disorder, a Plaintiff must show that he has "lumbar spinal stenosis resulting in pseudoclaudication . . . resulting in inability to ambulate effectively." (R&R 29–30; see also 20 C.F.R. § 404, Subpt. P, App. 1, § 1.01.)[1]  The ALJ

---

[1] "The regulation has since been amended so that Listing 1.04 no longer exists." *Aguirre v. Saul*, 568 F. Supp. 3d 477, 484 n.2 (S.D.N.Y. 2021).  Today, the equivalent listing is Listing 1.16, "Lumbar spinal stenosis resulting in compromise of the cauda equina." 20 C.F.R. § 404, Subpt. P, App. 1 § 1.01.

5

concluded that Plaintiff did not meet Listing 1.04C because "the evidence [fails to] demonstrate . . . lumbar spinal stenosis resulting in pseudoclaudication."  (SSA Admin. R. ("Rec.") 13 (Dkt. No. 16); *see also* R&R 30.)[2]  In support of Plaintiff's argument, Judge Davison indeed found that "the ALJ inaccurately indicated that Plaintiff did not have lumbar spinal stenosis resulting in pseudoclaudication" based on Judge Davison's thorough review of the record.  (R&R 30.)  However, Judge Davison found that Plaintiff did not establish that he was unable to ambulate effectively, as required to meet the qualifications of Listing 1.04C, and ultimately agreed with the ALJ that Plaintiff did not meet the listing requirements.  (*See id.* 30–31.)  In his instant objection, Plaintiff contends that, because "the ALJ never made this ruling" as to Plaintiff's ambulation "and never evaluated whether [] [P]laintiff could ambulate effectively" in his ruling, this issue should be remanded to the ALJ for further consideration.  (Pl.'s Objs. 1–2.)  The Court disagrees.

   In reviewing an ALJ's opinion, the Court's task is to determine whether the ALJ's decision was based on legal error or not supported by substantial evidence.  *See Rosa*, 168 F.3d at 77.  Plaintiff does not appear to dispute that the record provides substantial evidence to support a finding that Plaintiff failed to show ineffective ambulation, (*see* Pl.'s Objs. 1–2 (identifying no evidence from the record to support a finding of ineffective ambulation)), but instead argues that the ALJ must make this finding in the first instance, (*see id*. at 2).  However, "the absence of an express rationale for an ALJ's conclusions does not prevent [a reviewing court] from upholding them so long as [a court is] 'able to look to other portions of the ALJ's decision and to clearly credible evidence in finding that his determination was supported by

---

[2] When citing the SSA Administrative Record, the Court refers to the page numbers in the bottom right-hand corner for consistent pagination, rather than the ECF-generated page numbers.

substantial evidence.'" *Gantt v. Kijakazi*, No. 20-CV-8103, 2022 WL 214456, at *10 (S.D.N.Y. Jan. 25, 2022) (quoting *Salmini v. Comm'r of Soc. Sec.*, 371 F. App'x 109, 112 (2d Cir. 2010) (summary order)). In other words, Judge Davison conducted an assiduous review of the record—as he was required to do—to determine that the ALJ's decision was supported by substantial evidence, even though the ALJ did not make the specific finding. *See, e.g., Gonzalez v. Comm'r of Soc. Sec.*, No. 21-CV-800, 2022 WL 3348386, at *16 (S.D.N.Y. May 27, 2022) ("Despite the ALJ's lack of analysis, I respectfully recommend finding that the ALJ correctly concluded that Plaintiff's impairments also do not meet the criteria of the listing for disorders of the spine."), *report and recommendation adopted*, 2022 WL 3348525 (S.D.N.Y. Aug. 12, 2022). As such, Judge Davison was entitled to review the record to determine whether the ALJ's decision on Listing 1.04C was supported by substantial evidence.

Indeed, the Court agrees with Judge Davison that the record contains substantial evidence to support the ALJ's finding. Judge Davison identified several instances of evidence throughout the record indicating that Plaintiff effectively ambulated, indicating that Plaintiff did not meet the requirements of Listing 1.04C. (*See* R&R 30–31.) As outlined in the R&R, "Plaintiff is shown to have had a normal gait or ambulated effectively." (*Id*. at 31; *see also,* Rec. 300 ("He is able to walk with a normal reciprocal gait and is able to walk on his heels and toes without difficulty."); *id*. at 501 (listing ambulation as "[w]ithout assistance" and noting that "[t]he patient walks with a normal gait" and "[n]ormal station").) Indeed, Plaintiff himself reported to one doctor during the relevant period that he "does walk 20 blocks a day." (Rec. 487.) Moreover, Plaintiff "bears the burden of proof" to demonstrate that his impairment met the Listing requirements. *See Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008). Plaintiff was first made aware of the argument that he could ambulate effectively in the Government's memorandum in opposition to Plaintiff's

cross-motion on the pleadings. (Mem. in Supp. of Def's Mot. & in Opp. to Pl's Mot. 16 (Dkt. No. 25) ("[T]here is no evidence the condition resulted in an inability to ambulate effectively . . . .").) Plaintiff chose not to respond to this or any of the Government's arguments in opposition. (*See* Letter Reply 1 (Dkt. No. 26) ("I have now received and reviewed the Government's Cross Motion. After a review I will not be submitting any further reply.").) Now, before this Court, Plaintiff has *again* not identified any evidence in the record to support his burden of proof, despite clear and substantial evidence to the contrary. (*See generally* Pl.'s Objs.) Thus, the Court finds, as Judge Davison did, that although the ALJ in his analysis of Listing 1.04C, a review of the record confirms that the ALJ's finding was ultimately correct as Plaintiff did not meet the requirements of Listing 1.04C.

### 2. Evaluation of Plaintiff's Treating Physicians

Plaintiff next argues that the ALJ did not properly consider the opinions from treating physicians. (Pl.'s Objs. 2–3.) Specifically, Plaintiff argues that "the ALJ's assessment of the medical evidence in the record is inconsistent" and thus, the ALJ's "rejection of the opinion that [Plaintiff] was 100% disabled and unable to work was incorrect." (*Id*. at 2). Importantly, Plaintiff does not contend that the ALJ's review of this evidence was based on legal error, nor that the ALJ's determination regarding Plaintiff's disability was not supported by substantial evidence. (*See id.* at 2–3.) Instead, Plaintiff argues that the ALJ weighed the medical evidence incorrectly by "discredit[ing] the opinion[s] from the medical providers who [had] seen [Plaintiff] on a regular basis," and that, "[s]imply because [Plaintiff] was injured in a work[-]related setting is not reason to disregard the opinions from the multiple doctors." (*Id*. at 2.)

At bottom, Plaintiff asks this Court to reject the ALJ's assertion that the opinions of Drs. Cuartas, Sanz, Husain, and Quirno were found "under the workers compensation disability system, which has entirely different standards from those under the [SSA] and its accompanying

regulations." (Rec. 17; *see also id.* ("Moreover, a determination of disability or the claimant's ability to work under the [SSA] are issues reserved to the Commissioner of the Social Security Administration and opinions with respect to those issues are not entitled to deference or weight . . . . These claims are neither inherently valuable nor persuasive."); Pl.'s Objs. 2 ("There is no evidence that their assessment that the [P]laintiff had 100% temporary impairment and was unable to work was based upon a different framework.").)[3] This argument fails for three reasons.

First, Plaintiff appears to obliquely challenge whether the relevant medical opinions were found under the worker's compensation framework *at all*, (*see* Pl.'s Objs. 2), but this argument is easily discredited by the record before the Court. Each doctor assessed Plaintiff's 100% temporary impairment or disability in the context of his worker's compensation claim and under the applicable framework, as evidenced by the New York State Workers' Compensation Board narrative report forms that each doctor filled out in connection with those visits. *See, e.g.,* Rec. 505–07 (Dr. Cuartas' report of Plaintiff's visit on Apr. 27, 2017 "for a follow-up visit – Workers Comp"); *id*. at 503–04 (New York State narrative report prepared by Dr. Cuartas for Plaintiff's Apr. 27, 20217 visit); *id*. at 442–44 (Dr. Quirno's report of Plaintiff's Apr. 24, 2018 visit and accompanying New York State narrative report); *id*. at 479–80 (Dr. Husain's report of Plaintiff's Dec. 19, 2017 visit and accompanying New York State narrative report); *id*. at 526–32 (Dr. Sanz's report of Plaintiff's Apr. 10, 2017 visit and accompanying New York State narrative report). As such, Plaintiff's assertion that these doctors were solely "independent treating

---

[3] Plaintiff refers to a "Dr. Esteban Cortes" in his Objections, which appears to be a mistaken reference to "Dr. Esteban Cuartas" who treated Plaintiff during this period.

9

physicians" is patently incorrect—all four doctors were evaluating the Plaintiff pursuant to his worker's compensation claim.

Second, Plaintiff fundamentally mischaracterizes the duty of this Court in reviewing the ALJ's decision, as well as the ALJ's duty in reviewing a disability claim. As determined by both the ALJ and Judge Davison, (*see* Rec. 17; R&R 34–35), "[t]he standard for disability for workers' compensation purposes is different than the standard for [disability under the SSA]." *Prieto v. Comm'r of Soc. Sec.*, No. 20-CV-3941, 2021 WL 3475625, at *13 (S.D.N.Y. Aug. 6, 2021); *see also Lopez v. Berryhill*, 448 F. Supp. 3d 328, 345 (S.D.N.Y. 2020) (affording treatment records "little weight as those conclusions were rendered for the purposes of establishing disability according to Worker's Comp criteria, which is entirely different from the SSA's criteria" and noting that "the opinion provided in a workers' compensation claim . . . is not controlling with respect to a disability claim under the [SSA]" (quotation marks and citations omitted)). As such, "the ALJ was permitted to find—as he did—that the temporary impairment determinations made by Plaintiff's doctors were not binding." (R&R 35.) *See also* 20 C.F.R. § 404.1504 ("Because a decision by any other governmental agency or a nongovernmental entity about whether you are disabled . . . is based on its rules, it is not binding on us[.]"). Moreover, the governing regulations indicate that the ALJ should not and could not have considered these doctor's assertions that Plaintiff was 100% temporarily disabled as "conclusory statements by a claimant's provider concerning issues reserved to the Commissioner—for instance, whether the claimant is disabled under the Act—are 'inherently neither valuable nor persuasive' and will not be analyzed by the ALJ." *Ramirez v. Saul*, No. 20-CV-2922, 2021 WL 4943551, at *10 (S.D.N.Y. July 2, 2021) (quoting 20 C.F.R. §§ 404.1520b(c) *and* 416.920b(c)), *report and recommendation adopted*, 2021 WL 4264253 (S.D.N.Y. Sept. 20, 2021).

Third and finally, Judge Davison correctly observed that, even if these reports were not made in connection with Plaintiff's worker's compensation claim, at least three of the doctors' findings would not qualify as "medical opinions" under the SSA. (*See* R&R 35–38.) "Under the new regulations, a treating doctor's opinion is no longer entitled to a presumption of controlling weight." *Prieto*, 2021 WL 3475625, at *8. Specifically, the definition of medical opinion was updated, now defined as "a statement from a medical source about what [a claimant] can still do despite [the claimant's] impairment(s) and whether [a claimant has] one or more impairment-related limitations or restrictions" in the physical demands of work activities. 20 C.F.R. § 404.1513(a)(2). As such, and as outlined by Judge Davison, "a medical opinion must discuss both a claimant's limitations and what the claimant is still capable of doing despite those limitations." (R&R 35 (quoting *Ramirez*, 2021 WL 4943551, at *10).)

The Court agrees with Judge Davison and adopts his reasoning and determination that three of the four physicians' findings (Dr. Cuartas, Dr. Sanz, and Dr. Husain) do not constitute medical opinions because they do not discuss Plaintiff's limitations and what Plaintiff is still capable of despite those limitations. (*See* R&R at 35–37.) As to Dr. Quirno, Judge Davison reviewed and appropriately determined that the ALJ appropriately considered the evidence that supported Dr. Quirno's findings, but disregarded it because it was based upon the worker's compensation framework as discussed above. (*Id*. at 38.) To the extent that Plaintiff argues that this Court should "re-weigh the evidence," this is not the role of a reviewing court. *See Martinez v. Comm'r of Soc. Sec.*, No. 18-CV-1570, 2019 WL 3852439, at *10 (S.D.N.Y. Aug. 16, 2019). Where substantial evidence in the record supports "disparate findings," the Court must defer to the ALJ's factual determinations. *Quinones on Behalf of Quinones v. Chater*, 117 F.3d 29, 36

11

(2d Cir. 1997).  Thus, the Court finds that the ALJ properly considered the medical opinions from the treating physicians.

### 3.  Evaluation of Dr. Ronald Mann

Finally, Plaintiff argues that Dr. Mann's opinions "should not be considered persuasive" because Dr. Mann "was specifically hired by the Workers' Compensation insurance company to render an opinion for the purpose of litigation" and his opinion was "not discredited" on this basis.  (Pl.'s Objs. 3.)  It appears that Plaintiff is arguing that, if the opinions of Drs. Cuartas, Sanz, Husain, and Quirno are not persuasive because they were found in the context of a worker's compensation claim, Dr. Mann's opinions must also be found unpersuasive.  However, the Court disagrees.

Plaintiff is indeed correct that Dr. Mann also conducted his evaluations for consideration of Plaintiff's worker's compensation claim.  (Rec. 17 ("The claimant underwent a series of independent medical examinations by orthopedic surgeon for Workman's Compensation, with his initial evaluation in June 2017 by Dr. Ronald Mann . . . .").)  As discussed, a physician's opinion is not given a presumption of controlling weight when it is reviewed.  *Priesto*, 2021 WL 3475625, at *8.  However, "[a]lthough a disability determination by another agency or entity is not binding, the Agency 'will consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision." (R&R 35 (alterations omitted) (citing 20 C.F.R. § 404.1504).)  While not explicitly stated by either the ALJ or Judge Davison, it is clear from the record that this is indeed what each judge did.  The ALJ reviewed the evidence contained in Dr. Mann's opinions and made separate, detailed decisions on the persuasiveness of Dr. Mann's opinions.  (*See* Rec. 17 (finding Dr. Mann's opinion based on his June 2017 examination persuasive, but finding his opinion based on a December 2017 examination not persuasive).)  Judge Davison also reviewed Dr. Mann's opinions, and agreed

with the ALJ's determinations. (*See* R&R 40–41.) Moreover, to the extent that Plaintiff argues that Dr. Mann's opinions must also be found not persuasive, as Judge Davison found the opinions of Drs. Cuartas, Sanz, and Husain, (*see id*. 35–37), Dr. Mann's opinions contain the exact information that Judge Davison found the other doctors lacked: namely, Dr. Mann identifies Plaintiff's limitations and thus constitute medical opinions under the regulations. Therefore, the Court concludes that the ALJ appropriately considered the medical opinion of Dr. Mann.

## II.  Conclusion

For the forgoing reasons, the Court adopts Judge Davison's R&R, denies Plaintiff's Motion for Judgement on the Pleadings, and grants Defendant's Motion for Judgment on the Pleadings. The final decision of the Commissioner is affirmed. The Clerk of Court is respectfully directed to terminate the pending Motion, (*see* Dkt. No. 24) and close this case. SO ORDERED.

Dated:   March 28, 2023
         White Plains, New York

                                              _____
                                              KENNETH M. KARAS
                                              United States District Judge